# Steven E. Robbins v. Harbour Industries, Inc.

[556 A.2d 55]

No. 86-075

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed June 17, 1988

Motion for Reargument Granted in Part, Denied in Part, December 27, 1988

*Kohn & Rath*, Hinesburg, for Plaintiff-Appellee.

*Dennis W. Wells* and *Richard N. Bland* of *Downs Rachlin & Martin*, Burlington, for Defendant-Appellant.

**Keyser, J.** (Ret.), Specially Assigned. Harbour Industries, Inc. appeals from a Chittenden Superior Court jury verdict in plain-

tiff's favor in plaintiff's suit for wrongful discharge. The principal issue in the case is the subject matter jurisdiction of the trial court. We reverse.

In his complaint, plaintiff alleged that defendant fired him for attempting to organize and affiliate a union at its Shelburne plant. After the requisite number of signatures had been obtained on union representation cards, a union election was held in May, 1982, in which employees voted against union representation. On June 21, 1982, plaintiff reinjured his back while working in the shipping department and collected workers' compensation benefits for the next two months. On August 27, 1982, defendant terminated plaintiff's employment, and plaintiff filed a two-count complaint stated as follows:

> 5. The actual reason Plaintiff was terminated from his employment was because of his labor organizing activities, and the fact that he was viewed by management of Defendant as a leader of the workers, and/or for other reasons against public policy of the State of Vermont and of the United States.

> 6. Plaintiff was terminated from his employment as a result of a decision by management of Defendant to fire him for exercising his right protected by the Constitution and laws of the State of Vermont and of the United States to engage in concerted activity to better wages and better working conditions.

Count II of the complaint did not refer to union activities, but was based on allegations that "Defendant breached its express and implied agreement" not to terminate plaintiff "for reasons which were unlawful or against the public policy of the State of Vermont or of the United States, and that he would be dealt with fairly." The complaint sought compensatory and punitive damages.

On appeal defendant raises the single issue of preemption under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. There is no dispute that the issue of federal supremacy is one of subject matter jurisidiction, and that the issue of preemption was not raised during trial below.

Defendant suggests that the trial court lacked subject matter jurisdiction of the action because of the preemptive effect of the

NLRA. Plaintiff's action was grounded on defendant's retaliation for his union organizing activities, an unfair labor practice within the meaning of the Act, over which the National Labor Relations Act has exclusive primary jurisdiction. *San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236 (1959). *Garmon* held that the principles underlying the preemption policy were sufficiently compelling to require that result even where the offending conduct asserted could only be said to be arguably protected by the Act:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Id.* at 245. Section 7 of the NLRA provides that employees have the right to organize, for labor unions, and to engage in other concerted activities for the purposes of collective bargaining, Section 8(a)(1) of the NLRA provides that it is an unfair labor practice for an employer to interfere with an employee's exercise of § 7 rights. Section 8(a)(3) provides that it is an unfair labor practice for an employer to discriminate in regard to hire or tenure of employment to discourage membership in a labor organization.

■ In the first instance our inquiry is limited to the issue of whether plaintiff's claim falls within either of these provisions of the NLRA, in which case the action is preempted and cannot be brought before our state courts. On its face plaintiff's claim is squarely within the ambit of the NLRA, asserting as it does unlawful discharge for union organizing activity, which is conduct falling within the competence of the NLRA and cognizable in an action before the National Labor Relations Board. Nor does it appear that either of the exceptions to preemption of state jurisdiction recited in *Garmon* applies in the present case.

■ State jurisdiction is not preempted "where the activity regulated [is] a merely peripheral concern of the [NLRA]" or "where [it] touch[es] interests so deeply rooted in local feeling and responsibility that, the absence of compelling congressional direction, we could not infer that Congress has deprived the States of the power to act." *Id.* at 243-44. Plaintiff does not meet the test for either exception. He stresses on appeal that his case was brought on a second, nonfederal theory, an "implied contract to

treat people fairly" and that the jury could have found that he had not been so treated, in addition to the theory that he was fired for union activity. The trial court did instruct the jury on both counts, and since the jury returned a general rather than a specific verdict, plaintiff contends that under a general verdict the jury will be presumed to have found on the supported count, citing *Varnum* v. *Town of Highgate,* 65 Vt. 416 (1982).

█ The argument misunderstands the nature of the *Garmon* exceptions. The characterization of the claim under state law has little, if any, bearing on the outcome of the preemption issue. Rather, cases applying the exception for conduct which is only of peripheral concern to the NLRA almost always involve an analysis of the facts underlying the state action and a determination of "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board." *Sears, Roebuck & Co,* v. *San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 197 (1978). In *Sears* the Court held that a state trespass action to enjoin peaceful picketing was not preempted, where the union refused to remove pickets from Sears' property and the company hed obtained a late injunction against the trespass, requiring the pickets to move to a public sidewalk. Though the picketing was arguably protected under § 7 of the NLRA, the Court concluded that there was little risk of interference with the jurisdiction of the NLRA, since the trespass action concerned only the physical location of the pickets, not their purpose or motives, which would be issues before the Board under the NLRA. *Sears,* 436 U.S. at 198. Similarly, in *Belknap, Inc.* v. *Hale,* 463 U.S. 491 (1983), the Court held that workers hired to replace striking employees could sue in state court for misrepresentation and breach of allegedly permanent employment contracts when they were laid off at the conclusion of the strike. Though the permanent employment contracts offered the replacement workers were arguably a violation of the NLRA, the concerns of the state court and the Board were quite distinct and only the former could offer relief to the plaintiffs. Under those conditions, the interest of the state in protecting against misrepresentation clearly outweighed the interest of the Board under the Act. *Id.* at 511. See also *Linn* v. *United Plant Guard Workers of America,* 383 U.S. 53 (1966) (state court has jurisdiction in libel suit involving defamatory statements uttered during union organizing campaign); *Farmer* v. *United*

*Brotherhood of Carpenters & Joiners of America,* 430 U.S. 290 (1977) (NLRA does not bar suit for intentional infliction of emotional distress based on "outrageous conduct").

■ In the present case the complaint may speak of two theories, but the theories are based on the very same allegations about defendant's conduct in firing plaintiff for union activity. The unfairness claim rests wholly on the same factual allegations as the NLRA violation, not on an independent theory of recovery that could be said to be of only peripheral concern to the NLRA. Firing plaintiff for union activity is of basic and central concern to the NLRA.

■ Even if the unfairness count had been the only count in the complaint, the mere recitation of state-law based grounds would not end the preemption inquiry. Preemption cannot be avoided simply by invoking a state law of general application rather than one specifically aimed at regulating industrial relations. *Garmon* 359 U.S. at 244; *Sears,* 436 U.S. at 197. If that were the case, litigants could avoid preemption by asserting a broad common law or state statutory ground for recovery, avoiding all reference to union activities or issues, and then supporting that claim with evidence that the plaintiff was discharged for union organizing activities. Congress cannot have intended the NLRA policy of preemption to be defeated by such easy formalism. Thus, the inquiry mandated under *Garmon* is to determine "[w]hen an activity is *arguably* subject to § 7 or § 8 of the Act," 359 U.S. at 245 (emphasis added), fully acknowledging that conduct prescribed under the Act may also offend state law. Application of the preemption doctrine depends not on the form in which the statement of claim is made, but "upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." *Vaca v. Sipes,* 386 U.S. 171, 180 (1967). The critical inquiry is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board." *Sears,* 436 U.S. at 197.

Plaintiff's characterization of his state law claim is similar to that of the plaintiff in *Morris v. Chem-Lawn Corp.,* 541 F. Supp. 479 (E.D. Mich. 1982). In that case the court held that the plaintiff-employee's claim that she was discharged because of supporting a union, though couched in terms of a breach of employment contract, was identical to unfair labor practice claims under the

NLRA, and therefore plaintiff's claim was barred by preemption. The court said:

> Plaintiff's claim in Count I is couched in terms of breach of an employment contract. However, the basis of her claim, as revealed in her deposition and in her motion to compel discovery, is that her employer discharged her because of her support of organizing a union, Such an allegation is clearly an arguable violation of § 8(a)(3) of the National Labor Relations Act. The Supreme Court has indicated that the application of the pre-emption doctrine does not depend on the legal theories which plaintiff chooses to frame her claim but upon the nature of the conduct involved.

*Id.* at 482. And see *Viestenz* v. *Fleming Co.*, 681 F.2d 699 (10th Cir. 1982) (state tort claim for intentional infliction of emotional distress due to fact of discharge itself is preempted by NLRA); *Buscemi* v. *McDonnell Douglas Corp.*, 736 F.2d 1348 (9th Cir. 1984) (state claims for retaliatory discharge, wrongful termination, and intentional infliction of emotional distress due to discharge are preempted by NLRA).

In the present case the plaintiff's primary theories from the beginning of the lawsuit focused on conduct that arguably violated the NLRA. The trial court never obtained subject matter jurisdiction over the claim.

*Reversed.*

Plaintiff's motion for reargument is granted in part and denied in part. Plaintiff points out that he did not have the opportunity to amend his complaint before the trial court, as neither the parties nor the trial court addressed the issue of federal preemption at the trial. In response to plaintiff's motion to reargue on this point, we have recalled the opinion and revised it so that the entry order states: Reversed and remanded with leave for plaintiff to apply for amendment to the trial court, if so advised. Plaintiff's motion does not otherwise direct our attention to anything which we have not previously considered and dealt with in reaching our decision.

610

*Plaintiff's motion for reargument is granted for the entry order to be revised in accordance with this order, and is otherwise denied.*